UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SCOTT MCKENNA,**
Plaintiff,

Case No.: 8:26-cv-219-MSS-TGW

v.

**OLIVIA BENTSCHNER,**
in her individual capacity,

**SHERIFF OF PINELLAS COUNTY, FLORIDA,**
in his official capacity,

Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Scott McKenna ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.
2. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202.
3. Venue is proper in this District under 28 U.S.C. § 1391(b) because all events occurred in Pinellas County, Florida.

### II. PARTIES

4. Plaintiff Scott McKenna is a resident of Pinellas County, Florida.

1

5. Defendant Olivia Bentschner was at all relevant times a sworn Deputy Sheriff with the Pinellas County Sheriff's Office ("PCSO"), acting under color of state law. She is sued in her individual capacity.

6. Defendant Sheriff of Pinellas County is the final policymaker for PCSO and is sued in his official capacity pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

## III. FACTUAL ALLEGATIONS

### A. The Temporary Domestic Violence Injunction ("DVI")

7. On November 21, 2022, a Temporary Injunction for Protection Against Domestic Violence with Minor Children was entered against Plaintiff.

8. The DVI was obtained based on allegations including a purported vehicular "car chase" that **never occurred**, and claims that ordinary consumer electronics including **a Wi-Fi router, a computer microphone, and a Bluetooth CarPlay device** were covert tracking devices.

9. These allegations were unsupported by any forensic or law-enforcement investigation yet were accepted for purposes of the ex parte DVI.

10. The DVI did **not** prohibit all contact, did **not** designate the child's doctor's office as a prohibited location, and expressly contemplated limited child-related coordination.

11. The DVI criminalized only **willful violations**. See Fla. Stat. § 741.31.

12. Under Florida law, injunctions are **strictly construed**, and criminal liability exists only for conduct clearly and expressly prohibited. *State v. Holloway*, 790 So. 2d 1211 (Fla. 2d DCA 2001).

### B. Prior Adverse History and Retaliatory Animus

13. Prior to the divorce proceedings (months), Defendant Bentschner had prior law-enforcement contact with Plaintiff.

14. Defendant Bentschner issued Plaintiff a traffic citation in Tierra Verde, Florida, which Plaintiff contested and won on the merits.

15. Plaintiff raised concerns regarding Defendant Bentschner's conduct and requested additional training.

16. Defendant Bentschner was visibly displeased by the outcome.

17. This adverse history predated the arrests at issue and was not disclosed when Defendant later prepared sworn affidavits concerning Plaintiff.

### C. December 1, 2022  Child's Medical Appointment

18. On December 1, 2022, Rachel McKenna affirmatively requested, through the Talking Parents application, that Plaintiff bring their minor child to a medical appointment.

19. Throughout the morning, Rachel McKenna:

- Directed Plaintiff to the doctor's office;
- Provided the address and suite number;
- Proposed meeting there;
- Directed Plaintiff to bring the child to the lobby and then leave.

20. Plaintiff acted solely to transfer the child for medical care at the petitioner's direction and on advice of Plaintiff's counsel.

21. Plaintiff sought to avoid any violation and did not harass, threaten, follow, or communicate beyond logistics.

### D. The Allegedly Incriminating Message

22. While at the location, Plaintiff sent the following Talking Parents message:

"I'm here and you're here — do you want to take Hudson or how do we do this? I don't want either of us to get in trouble."

23. The message expressed concern about compliance with the injunction and sought guidance on avoiding any violation.

24. Plaintiff immediately complied with Rachel McKenna's instructions and left the area without incident. Two weeks later plaintiff was arrested by Defendant Bentschner.

### E. Improper Ex Parte Communications and Conflicts

25. Rachel McKenna maintained direct personal text communications with Defendant Bentschner via Defendant's cellular phone.

26. These communications included transmission of photos, documents, and narrative information regarding alleged violations, and discussion of adding charges.

27. Plaintiff was never afforded similar access and was not contacted or interviewed prior to enforcement action.

28. Defendant Bentschner failed to disclose these communications in her arrest affidavit or official reports.

29. Defendant Bentschner was supervised by Sergeant Greene, who was a psychiatric patient of Rachel McKenna during the same period and is shown on both reports.

30. No recusal, review, or mitigation was implemented.

### F. Arrest Affidavit and Continued Detention

31. On December 15, 2022, Defendant Bentschner submitted a sworn arrest affidavit alleging Plaintiff **willfully** violated the DVI.

4

32. The affidavit selectively relied on a single message while omitting material exculpatory facts, including:

    a. The petitioner's repeated requests and directions;

    b. That the location was not prohibited;

    c. That Talking Parents communication was authorized;

    d. Plaintiff's expressed concern about compliance;

    e. Plaintiff's immediate departure.

33. These omissions were material and negated both probable cause and willfulness.

34. Plaintiff was detained and jailed based on the defective affidavit and characterized as a danger despite no criminal history and the State's intent to dismiss.

## IV. CLAIMS FOR RELIEF

**COUNT I  Fourth Amendment False Arrest**

(42 U.S.C. § 1983 — Against Defendant Bentschner)

35. As a direct and proximate result of Defendant's conduct, Plaintiff was detained and, upon release, placed under electronic monitoring, restricted to Pinellas County, and barred from contact with his children, extended family, and church. These conditions remained in effect from December 16, 2022 until January 9, 2023, when the State Attorney dismissed the charge, resulting in Plaintiff's complete loss of parenting time and familial association during that period. Defendant lacked even arguable probable cause. *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007).

**COUNT II  Fabrication and Omission of Evidence**
**(Fourteenth Amendment — 42 U.S.C. § 1983)**

37. Defendant knowingly or recklessly omitted material facts from a sworn affidavit.

38. Such conduct violates *Franks v. Delaware*, 438 U.S. 154 (1978), and *Paez v. Mulvey*, 915 F.3d 1276 (11th Cir. 2019).

## COUNT III  Prolonged Detention Without Probable Cause

(Fourth Amendment  42 U.S.C. § 1983)

39. Defendant's conduct caused Plaintiff's detention to continue after legal process began. *Manuel v. City of Joliet*, 580 U.S. 357 (2017).

## COUNT IV  Municipal Liability (Monell)

(Against Sheriff of Pinellas County)

40. Plaintiff's injuries were caused by PCSO policies or customs, including:
    a. Failure to train on DVI limits;
    b. Permitting selective affidavits;
    c. Failure to police conflicts of interest;
    d. Tolerating retaliatory enforcement.

## COUNT V  MALICIOUS PROSECUTION

**(Fourth Amendment — 42 U.S.C. § 1983)**
**Against Defendant Olivia Bentschner (Individual Capacity)**

41. Plaintiff realleges and incorporates by reference Paragraphs 1–40 of this Complaint as if fully set forth herein.

42. Defendant Olivia Bentschner initiated and continued a criminal prosecution against Plaintiff by preparing, swearing to, and causing to be filed a criminal arrest affidavit alleging a willful violation of a domestic violence injunction.

6

43. The prosecution was commenced pursuant to legal process, including the issuance of a warrant or arrest authorization, and resulted in Plaintiff's arrest, incarceration, and continued seizure of his person.

44. Defendant was the legal and proximate cause of the prosecution by:

    a. Supplying false or misleading statements; and

    b. Knowingly or recklessly omitting material exculpatory facts from the sworn affidavit.

45. The criminal proceeding terminated in Plaintiff's favor when the State Attorney entered a nolle prosequi / dismissal, constituting a favorable termination under clearly established Sixth Circuit law.

46. Defendant lacked probable cause to initiate or continue the prosecution because:

    a. Plaintiff's conduct was not clearly or expressly prohibited by the injunction;

    b. The injunction criminalized only willful violations;

    c. Defendant omitted facts demonstrating Plaintiff's intent to comply and the complainant's direction to meet;

    d. No reasonable officer could conclude a willful violation occurred under these facts.

        1. Defendant acted with malice, which may be inferred from:

            a. The absence of probable cause;

            b. Defendant's prior adverse history with Plaintiff;

            c. Defendant's selective reliance on a single message while omitting extensive exculpatory communications;

            d. Defendant's undisclosed ex parte coordination with the complainant.

47. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, humiliation, reputational harm, legal expenses, and other damages.

48. Defendant's conduct violated Plaintiff's clearly established Fourth Amendment right to be free from seizure pursuant to malicious prosecution.

## COUNT VI — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Against Defendant Olivia Bentschner (Individual Capacity)**

49. Plaintiff realleges and incorporates by reference Paragraphs 1–49 of this Complaint as if fully set forth herein.

50. Defendant intentionally or recklessly engaged in conduct including:

    a. Knowingly causing Plaintiff's arrest and continued incarceration without probable cause;

    b. Privately coordinating ex parte with the complainant outside official law-enforcement channels;

    c. Characterizing Plaintiff as a **danger to society** despite knowledge of exculpatory facts;

    d. Causing Plaintiff, a non-violent individual, to be jailed and kept incarcerated under **degrading and dehumanizing conditions**.

51. Defendant's conduct was **extreme and outrageous**, exceeding all bounds of decency tolerated in a civilized society, particularly given:

    a. Defendant's position of law-enforcement authority;

    b. The deliberate misuse of the criminal justice system; Upon information and belief, Defendant contacted or communicated with the State Attorney's Office and represented that Plaintiff posed a danger to the community, urging that Plaintiff

    remain incarcerated despite the absence of probable cause and the State's intent to dismiss.

    c. Plaintiff's known status as a non-violent individual whose background contains no history of violent conduct.

52. Defendant's conduct caused Plaintiff severe emotional distress, including but not limited to intense fear, humiliation, anxiety, loss of dignity, and lasting psychological harm.

53. The emotional distress suffered was severe and of such intensity that no reasonable person should be expected to endure it.

54. Defendant's conduct was the legal and proximate cause of Plaintiff's injuries.

## VI. DAMAGES

55. Plaintiff seeks compensatory damages, punitive damages against Defendant Bentschner, declaratory relief, attorney's fees under 42 U.S.C. § 1988, and all other appropriate relief.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*[signature]*

**Scott McKenna**
4905 34th Street South #435
Saint Peterburg, FL  33711
727-999-2420
scottmckenna@gmail.com